1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  FRANK L. KIEFER and
   MYRTLE KIEFER,
4
                  Plaintiffs,
5
             v.                        12 Civ. 7613 (KBF)
6
   CRANE CO., et al.,
7                                      Telephone Conference
                  Defendants.                 and
8                                           Decision
   ------------------------------x
9
                                       New York, N.Y.
10                                     February 3, 2014
                                       10:40 a.m.
11
   Before:
12
             HON. KATHERINE B. FORREST
13
                                       District Judge
14

15
             APPEARANCES
16

17
   WEITZ & LUXENBERG P.C.
18       Attorneys for Plaintiffs
   BY:  ADAM COOPER
19       DAVID A. CHANDLER

20
   ALANI GOLANSKI
21       Attorney for Plaintiffs

22
   K&L GATES LLP
23       Attorneys for Defendant Crane Co.
   BY:  ERIC R.I. COTTLE
24       NICOLE M. KOZIN

25

            APPEARANCES


BARRY, MCTIERNAN & MOORE LLP
      Attorneys for Defendant Cleaver Brooks Company
BY:   SUZANNE M. HALBARDIER


DARGER ERRANTE YAVITZ & BLAU LLP
      Attorneys for Defendant Gould Electronics
BY:   ERIC STATMAN


JACKSON WEILL
      Attorney for Defendant Eaton Corporation

1          (Case called)

2          THE COURT:  Let me tell everyone that we've got a

3    court reporter here who is making a transcript of this.  To the

4    extent that people speak, they should identify themselves so

5    that he can be sure to have the transcript accurately reflect

6    everyone.

7          Originally, you folks had asked to have a conference

8    to discuss submissions for the trial.  I want to use this time

9    instead to announce and recite the Court's decisions on several

10   pending motions.

11         First, the motion to quash the subpoena is granted.

12   That is at ECF number 251.  There are two reasons for that.

13   One, even if this trial were to proceed, the party who has been

14   subpoenaed is beyond the subpoena power of this Court.  In any

15   event, as will soon become apparent, as to Crane and Cleaver

16   Brooks, the Court is going to grant their pending motions for

17   summary judgment.

18         Let me now recite those decisions.  I will say that

19   I've got my notes here, having gone through the record, but I

20   don't have a written opinion, nor does the Court intend to

21   write an opinion.  This transcript will constitute the opinion

22   of the Court.  A separate short order, just one line as to

23   each, will issue that will reflect the grant of summary

24   judgment.

25         First, I wanted to note that as to both Crane

1    Company's motion for summary judgment and Cleaver Brooks'

2    motion for summary judgment, the plaintiffs did not file a

3    responsive 56.1 statement.  That is not the sole basis for my

4    denial, but it is in and of itself a sufficient basis for a

5    grant of summary judgment.  It is a sufficient basis for a

6    grant of summary judgment because it renders the statements in

7    the defendant's 56.1 unopposed.  I'll talk about the

8    affirmation that plaintiffs submitted in a moment.

9          The Court notes in this regard various Second Circuit

10   and district court opinions, finding that failure to comply

11   with the Local Rule 56.1 renders the facts unopposed and

12   therefore admitted for purposes of summary judgment.  That is,

13   for instance, the Millus case, 224 F.3d 137; also the Holtz

14   case, 258 F.3d 62.  There is also the Gubitosi case, 154 F.3d

15   30.  There are numerous district court cases, but I'll just

16   recite the cites for two:  The American National Fire Insurance

17   Co. case, 265 F.Supp.2d 240, and also the Sommer case, which is

18   a citation of 2003 Westlaw 21692816.

19         With that said, the Court does note that in this

20   instance there were with respect to each of the motions

21   affirmations submitted by counsel for plaintiffs, attached to

22   which were materials which the plaintiffs then proceeded to

23   rely upon in the form of an attorney affirmation for the

24   propositions of fact which he wanted to put forward.  That is

25   not a sufficient manner for opposing 56.1.

1           The point of a 56.1 statement is that the movant has

2      to set forth specific factual propositions supported by

3      evidentiary material, and the opponent of the motion has to

4      respond specifically to those assertions, putting forward

5      specific evidence as to those particular assertions as to why

6      they are insufficient, as opposed to, for instance, only

7      putting forward evidence which is supportive of the opponents'

8      assertions.

9           There is, of course, an ability to put forward

10     additional facts, but that is an additional ability.  The Court

11     was placed in a position of hunting and pecking through the

12     record to try to find out which specific facts are unopposed or

13     undisputed and which are not, and that is not the purpose of

14     56.1.  56.1 is to eliminate that.

15          With that said, the Court does find that the failure

16     to put in an opposition to 56.1 is a sufficient basis upon

17     which, as I mentioned, to grant both motions for summary

18     judgment, but it is not the sole basis.  Let me now recite some

19     common factual predicates as to both motions.  Then I will

20     separate the motions and go through them one by one.

21          First, the plaintiff Mr. Frank Kiefer died of

22     mesothelioma, which is asserted to be the result of asbestos

23     exposure.  It is undisputed -- and all of these facts are

24     undisputed unless I state otherwise -- that he worked for the

25     Navy from 1952 to 1956, he did renovations from the '50s to

1    about 1980, he worked as an electrician during the 1960s to

2    1974, he was a bystander while others worked on tile and

3    insulation from 1972 to 1974, he worked at the Burroughs

4    Corporation from 1981 to 1983 or '85, and he worked for the

5    Stony Brook Museums from the late 1980's to the mid 1990s.

6         He also passed away prior to the completion of his

7    deposition.  That becomes important because, as will be

8    described in a moment, the Court does not find that his

9    deposition in its partial form is admissible.  The Court finds

10   that it is not admissible.

11        It does it not fit within one of the types of

12   exceptions which the Court could find for certain depositions

13   where the plaintiff has not survived to completion.  Here the

14   deposition does not meet those factual requirements, and the

15   Court finds that there is an insufficient basis upon which to

16   admit it.

17        Now let's turn for a moment to the Cleaver Brooks

18   motion for summary judgment in particular.  Mr. Kiefer worked,

19   as I said, at Cleaver Brooks.  He worked there with a fellow

20   named Lorenzo Galante.  Mr. Galante was his co-worker from 1980

21   to about '83 or '85.  Although Galante, I note, held different

22   positions at the Burroughs facility, he was working in

23   different areas, but he was a maintenance mechanic for at least

24   a year or so, so a year plus, at Burroughs, and during that

25   time he worked with Mr. Kiefer, who was the director of

1   maintenance facilities at Burroughs.

2          Mr. Galante was deposed in this matter on November 27

3   and December 18, 2012.  His deposition the Court has reviewed.

4   There were instances in which maintenance was performed on a

5   boiler at the facility.  Plaintiffs assert that there is a

6   triable issue as to whether Mr. Kiefer was exposed to asbestos

7   in connection with that boiler maintenance.

8          The plaintiffs have proffered various written

9   materials, including service manuals, parts order instructions,

10  which plaintiffs believe support their contention that the

11  boiler and the parts that Mr. Kiefer was working with at least

12  inferentially contained asbestos and that he was inferentially

13  then exposed to the asbestos therefrom.

14         Plaintiffs acknowledge that the exposure was

15  necessarily circumstantial -- again, we are talking about the

16  Cleaver Brooks motion -- but plaintiffs argue that those

17  circumstances do support Cleaver Brooks defectively designing

18  products and the products being inherently dangerous and that

19  there was a failure to warn.

20         In support of their motion, the defendant asserts that

21  Kiefer has not put forward sufficient evidence to raise a

22  triable issue as to whether or not he was exposed to asbestos

23  sold or supplied by Cleaver Brooks.  This Court does agree with

24  that and therefore grants Cleaver Brooks' motion.

25         The Court notes that defendant at one point argued

1   that plaintiffs have not proved this fact, but of course that

2   is not the standard, and the bulk of the motion is not written

3   to that standard.  The standard is whether there is a triable

4   issue.  But there is not a triable issue.

5          The only evidence in the record relating to Cleaver

6   Brooks does come from Mr. Galante.  As the Court noted, he

7   worked on the production floor at one point and was only a

8   maintenance mechanic for about a year and a half prior to the

9   time the facility was closed, so it was during that time that

10  he could have worked with Mr. Kiefer.

11         Mr. Galante testified that he recalled two Cleaver

12  Brooks boilers that were located in the northeast corner of a

13  building, in a separate room, and also that each boiler would

14  be opened up two times per year.  However, Mr. Galante did not

15  describe the type of work performed on the boiler.  He did

16  state that Mr. Kiefer would be present 90 percent of the time

17  that the boiler was being opened for maintenance, although it

18  is unclear as to whether that was the initial opening or

19  throughout the time of the opening.

20         It is undisputed that an outside company performed the

21  actual maintenance work.  Galante only has firsthand knowledge

22  of seeing Mr. Kiefer help loosen the bolts on a boiler once,

23  and he did not notice any asbestos exposure then, and he

24  himself did not perform any maintenance work on the boilers.

25         Mr. Galante speculates that Kiefer may have been

1    exposed to asbestos from the gaskets when the doors were open,

2    but that is not admissible, because it is simply speculation.

3    Of course, the Court can only rely upon admissible evidence in

4    the context of summary judgment.

5            Here, for summary judgment the defendant with respect

6    to the Crane case has to make a prima facie showing that its

7    product could not have contributed to the causation of

8    plaintiff's injury.  That is the Comeau case that defendants

9    cite.  Plaintiff, of course, has the burden to identify the

10   product which injured him and must prove or at least raise a

11   triable issue as to whether the injured person was in the

12   vicinity of defendant's asbestos-containing products, including

13   times and locations.

14           In the Comeau case the plaintiffs submitted invoices

15   for fireproofing material.  But there, as defendants noted, the

16   Court found there was not a sufficient evidentiary showing to

17   allow a reasonable inference of whose products plaintiffs

18   inhaled fibers from.

19           Here the only admissible evidence as to Cleaver Brooks

20   is that Kiefer was present when boilers were opened.  There is

21   no tie between that and inhaling asbestos from the defendant's

22   products.  As a result, summary judgment is required for

23   Cleaver Brooks.  There is just an insufficient nexus.  So, that

24   motion is granted.

25           The Crane motion is a bit more involved.  Here the

1   defendant Crane argues, and it is Crane Company the Court is

2   referring to, that summary judgment is appropriate because

3   there is again no admissible evidence that raises a triable

4   issue that Kiefer was exposed to asbestos from a Crane Company

5   product.

6           While there is testimony that Mr. Kiefer removed Crane

7   Company valves from boilers in an apartment house in D.C., that

8   testimony comes from Crane itself, and that testimony is not

9   admissible.  There is no other testimony that a Crane Company

10  valve as to which he was exposed contained asbestos.  We will

11  get to Mr. Galante's testimony in a moment.

12          The Court does agree with the rationale in Young v.

13  U.S. Postal Service, 1988 Westlaw 126906, at *4, regarding the

14  admissibility, or here the inadmissibility, of a decedent's

15  deposition testimony prior to the conclusion of a deposition.

16  The Court accordingly does not believe Kiefer's deposition

17  would be admissible and would not allow it in.

18          In the Crane Company case Mr. Kiefer's co-worker

19  Galante also testified.  Mr. Galante only had knowledge that

20  starts in 1980, so the prior periods of time are eliminated at

21  the outset.  Mr. Galante worked with Kiefer sometime during the

22  period from 1980 to '83 or '85, but he was only in maintenance

23  for about a year or so during that time.  There is no evidence

24  in the record that he ever saw the residential apartment

25  building in which Mr. Kiefer worked and replaced valves or that

1    he had any firsthand knowledge of that.

2            Galante, during his testimony, did, in response to

3    questioning from plaintiffs' counsel, vaguely identify Crane

4    Company with valves because the name was stamped, he said, on

5    the side of the valve.  But his testimony in terms of knowledge

6    was really geared towards the packing material because it was

7    the packing material that his testimony referred to most.  As

8    to the valves, he doesn't recall the material that it was made

9    out of, but he does recall that there were packings that were

10   internal to the valve.

11           The question becomes whether or not the packing

12   material inside the valves is sufficiently tied to Crane

13   Company.  The defendants argue that the Galante deposition

14   should not be admissible, because Galante was led by

15   plaintiffs' counsel.  However, Galante, once shown the name

16   Crane, does testify as to his recollection of Crane packing,

17   and therefore the Court finds that he likely would be found to

18   have a sufficiently refreshed recollection that the testimony,

19   if relevant, would be allowed.

20           Here there is not a sufficient showing of relevance,

21   because Galante is not able to say whether or not Crane was in

22   fact Crane or Crane Company or Crane Packing Company.  It is

23   undisputed that Crane Company is not related to Crane Packing.

24   The material reflective of that is contained in footnote 4 of

25   the Crane Company brief.

1       Under New York law it is clear that one manufacturer

2  cannot be held liable for the products of another.  That is

3  Judge Chin's decision in the Surre v. Foster Wheeler case, 831

4  F.Supp.2d, pin cite at 798.  That is true even if it is known

5  that the asbestos-containing product would be used in

6  conjunction with the defendant manufacturer's own product

7  unless it was necessary that only that particular product could

8  be used or there was involvement in the selection of the

9  asbestos-containing product.  Neither of those facts are

10 present here.

11      Here the Court does find analogous the Lindstrom v.

12 A-C Products Liability Trust case, 264 F.Supp.2d 583, pin at

13 594, a Northern District of Ohio case in 2003.  While in no way

14 binding on this Court, the facts are sufficiently similar and

15 the rationale is sufficiently helpful that the Court does find

16 it useful to refer to that court.  There the district court

17 held that Crane Company could not be held liable for Crane

18 packing, with a lower case p, when evidence does not raise a

19 triable issue that the packing material was made by Crane

20 Company.  Here that is the case.

21      Galante states that he is not able to say that the

22 packing material even contained asbestos.  The Court does note

23 that defendant's answers to the interrogatories at page 6 do

24 state that certain Crane valves had packing enclosed, but the

25 plaintiffs failed to raise a triable issue to connect the Crane

1    valves here at issue in the 1980's time frame to Crane Company

2    asbestos packing.  The interrogatory answer is only suggestive

3    of certain valves, and there needs to be a triable issue as to

4    the particular valves as to which Mr. Galante saw Mr. Kiefer

5    handling.

6           For instance, there could have been a demonstration by

7    plaintiffs that no other packing material was acquired apart

8    from Crane Company packing material that may have come with the

9    valves, and it would have needed to have been within the time

10   frame that Mr. Galante was working with Mr. Kiefer.  There is

11   none of that.  It is just speculation that the particular Crane

12   Company valves used in the 1980 time frame had Crane Company

13   packing number 1, then a second level of speculation that that

14   Crane Company packing had asbestos, and that's too many leaps.

15          The Court does accept for purposes of this decision

16   that it is possible that Crane Company sold certain valves with

17   asbestos and that the asbestos contained packing, but there is

18   no evidence in the record before the Court that that's all that

19   Crane sold in terms of valves, in other words, that the only

20   valves which Crane sold contained Crane Company asbestos

21   packing or, more particularly, that in the 1980s the valves

22   which Mr. Kiefer was working with from Crane contained Crane

23   Company packing that had asbestos.

24          The plaintiffs have put forward a variety of materials

25   from defendants dating back to 1925, 1945, 1953, 1957, and

1   1972, all of which are written materials that discuss Crane

2   Company valves and the utilization of asbestos with certain

3   Crane Company valves either around them or in them.

4          However, all of those materials predate the time frame

5   that is relevant here and as to which Mr. Galante has the

6   firsthand knowledge, and that is 1980.  None of them get to

7   that time period, and none of the evidence is shown to actually

8   still be applicable during the 1980 time frame as to all Crane

9   valves with the particular Crane packing material which Mr.

10  Galante said he saw.

11         This evidence, therefore, falls short of what is

12  required to raise a triable issue of fact as to whether this

13  particular defendant put into the stream of commerce the

14  asbestos to which Kiefer was exposed.

15         Under the Surre case, at 801 to 802, there is a

16  similar basis for granting the motion for summary judgment.

17  The Court agrees with the Surre case that under prevailing case

18  law the correct rationale is that the stream of commerce test

19  applies, not the foreseeability test, thereby requiring the

20  grant of summary judgment.

21         As a result, as I mentioned before, of those two

22  decisions on summary judgment, that does moot in all events the

23  subpoena at ECF number 251 insofar as it relates to Cleaver and

24  Crane.  The Court further, however, quashes the subpoena as

25  being outside the subpoena power of the Court.  As to Gould and

1    the other remaining defendant, that is also quashed.

2          There are two remaining defendants in this case, Gould

3    and Eaton.  The Court notes that they did not appear at a

4    conference back in October.  However, they are not dismissed

5    from the case, and therefore the case is not yet fully

6    completed.  The motion to amend at ECF number 254, which is

7    just to change the caption, is granted as not substantively

8    changing a claim or how this action would be prosecuted.  So,

9    as to Gould and Eaton, the case will proceed to trial on the

10   schedule previously noted.

11         That disposes of summary judgment and leaves us with

12   Gould and with Eaton.  Let me ask if there is a status report

13   as to either of those two defendants or if people would like

14   just to talk about the submissions for the jury trial as to

15   those defendants.  In other words, if there is a pending

16   settlement, let me know, and I won't waste my breath.  But I'm

17   happy to go into what needs to be prepared for the trial.

18         MR. COOPER:  Adam Cooper on behalf of the plaintiffs.

19   There is certainly no pending settlement, at least as of today.

20   I know we are speaking with both of the remaining defendants,

21   but as of today there is no settlement pending.

22         THE COURT:  There being no settlement, we do have a

23   trial date scheduled.  The Court does have the time to proceed

24   on that date and expects to do so.  We do have a final pretrial

25   conference scheduled in this case, and there are materials set

16

1   forth in my individual rules which outline what gets submitted

2   for purposes of a jury trial, which is what we have here.

3          Those materials, in short, are a list of trial

4   exhibits with an indication as to which are objected to and a

5   response to any objections.  That would be on like an Excel

6   spreadsheet with a blank column for the Court to rule.  An

7   example of that is going to go up on my website, on the website

8   associated with my individual rules, today so you will be able

9   to see exactly what I am talking about in terms of the format

10  for that chart.

11         That will mean that, for instance, if there are 75

12  exhibits and only 5 are objected to, I need to have copies of

13  those 5 and an indication on the chart as to the nature of

14  objection, for instance, hearsay; a response, for instance,

15  business record; and then I will make a ruling, for instance,

16  overruled.

17         Also, for instance, for the entity that is located

18  outside of the 100 miles, any deposition designations need to

19  go in beforehand as part of the pretrial order.  The Court asks

20  the parties to do those in color and to color code them so that

21  I can see where the designations are, the counterdesignations

22  in a different color, and then objected-to testimony in the

23  red.

24         The red testimony goes onto a similar chart with the

25  objection noted, for instance, hearsay; the response, for

instance, not offered for the truth; and then the Court would
have a blank space for a ruling, which might be, for instance,
objection overruled.  An example of that is also going up on my
website.  It happens that I completed the examples just today
and I am updating my rules just today to reflect that so you
will have the benefit of that.

I also require joint proposed jury instructions.  You
don't need to do the basic jury instructions, such as how to
assess credibility, what circumstantial evidence means.  What I
really need are the jury instructions as to the substantive
causes of action.

If you folks agree, include both of your instructions
on a particular page or on pages one after the other.  I will
then look at any citations that you offer in support of your
instruction, and then I will rule.  You will get a copy,
obviously, of the jury instructions.  We will go through them
at least once fully, and you will be heard on them fully before
the jury is instructed.

The Court also asks for proposed voir dire.  Because
you folks, I know, have a lot of these types of cases in state
court, just a reminder, which you probably don't need, that
voir dire in the federal system is done by the judge.  It is
discretionary.  I do it myself.  I will use certain questions
that you have, but I do not do the kind of voir dire that you
folks might be used to in state court, where it probes a

1  prospective juror's willingness to grant damages in particular

2  amounts or something of that nature.

3       For me, I'm looking to unearth bias, prejudice of some

4  kind, or other factors which could lead to an unfair trial, not

5  to get their dispositions towards a particular result other

6  than whether or not there is a negative bias towards a party or

7  towards a type of claim where they are unlikely to give

8  somebody a fair trial.

9       In addition, if you want to use technology, you need

10 to get a technology order in.  That's on the SDNY website.

11 There is a provision for technology orders where you can bring

12 in laptops or projectors so you can have whatever support you

13 would like in front of the jury.

14      I do allow jury books if there are documents which you

15 think are easier to have in a single book for the jury.  They

16 need to be clearly tabbed so that the jury can be clearly

17 instructed only to turn to a particular tab once that document

18 has been admitted and is otherwise available to be published to

19 the jury.

20      Those were some of the logistics.  What other

21 questions do you folks have?

22      MR. STATMAN:  This is Eric Statman from Darger Arrante

23 for Gould Electronics.  Before I actually get started, I want

24 to say that we last week filed a motion for substitution of

25 counsel.  That has not yet been ordered by the Court.  Prior

1    counsel was the O'Toole firm from New Jersey.

2              THE COURT:  If you are the substitution that I'm

3    thinking of, and maybe you are not, there was one that I

4    received recently for this case which stated that you would be

5    able to meet the trial date.

6              MR. STATMAN:  Yes.

7              THE COURT:  Therefore, I so ordered the substitution.

8    If that's not gone up, could you resubmit your letter?  It is

9    possible it got lost down in docketing someplace.

10             MR. STATMAN:  OK.  I just wanted to let the Court know

11   that I was chary of speaking when I wasn't aware that the

12   substitution had been granted.  With the Court's permission, I

13   would like to raise a point or two.

14             THE COURT:  Absolutely.  So long as you are able to

15   meet the trial schedule, I have no problem with the

16   substitution.

17             MR. STATMAN:  We will be able to meet the trial

18   schedule, your Honor.

19             THE COURT:  All right.

20             MR. STATMAN:  My question actually goes to motions in

21   limine.  I wanted, if I could, to get some clarification about

22   the timing and also what the Court really wants in terms of

23   motions in limine.  I know that they are supposed to be

24   included in the pretrial order, but there is also a statement

25   from the Court that if no date is set for motions in limine,

```
 1   they have to be made and submitted a certain time before the

 2   trial.

 3          The pretrial order is due on the 14th.  I was

 4   wondering if the date of the pretrial order is the date when we

 5   are supposed to make our motions in limine or if the Court

 6   prefers to have them fully briefed at some other date.

 7          THE COURT:  On motions in limine, I need them by the

 8   Friday before the final pretrial conference.  The final

 9   pretrial conference is the 14th?

10          MR. STATMAN:  The 19th, I believe.

11          THE COURT:  I'm sorry, you're right.  I need them by

12   the 14th.  The way that I do them is I don't have replies on

13   motions in limine.  I ask you to include all of your motions in

14   a single brief.  I don't really care how long it is.  If you

15   have three points to raise, include them all in the same motion

16   in limine so I don't have a lot of different papers floating

17   around.  If you have 15, then there will be 15.  It does not

18   need to go over your objections to documents, as to random

19   routine document objections.  But I need them by the 14th so I

20   can take them home, read them, and then I will rule on them

21   either on the 17th or at the final pretrial conference itself.

22          MR. STATMAN:  Understood.

23          MR. COOPER:  Your Honor, Adam Cooper again.  The issue

24   we are facing is if the motions in limine have to be served and

25   submitted on the 14th, which is a Friday, we are going to need
```

1  to put --

2          THE COURT:  No.  I'm sorry.  They will have to be

3  fully briefed by the 14th.  I have to have them by the 14th.

4  That means motions in limine would have to go in on the 7th and

5  then they would be opposed on the 14th.

6          MR. COOPER:  Submitted by the 7th, opposed by the

7  14th?

8          THE COURT:  Yes.

9          MR. STATMAN:  Your Honor, this is Eric Statman again.

10  When it comes to length, certain courts have different

11  preferences as far as that goes for each individual motion.

12  Some of our motions that have been submitted in state court,

13  for example, to certain judges have been made with affidavits

14  and a full set of documents and fairly lengthy briefs,

15  sometimes exceeding 10 pages or so.  Other judges have required

16  a single paragraph or two.  Either way, we will accommodate

17  whatever the Court wants to do.  One way is more fulsome than

18  the other.

19          THE COURT:  We are still on the topic of motions in

20  limine?

21          MR. STATMAN:  Yes, your Honor.

22          THE COURT:  Let me say a couple of things in that

23  regard.  One, I do want a single brief for all motions in

24  limine from the moving party and then a single opposition that

25  will track that brief.  For instance, let's say you've got five

1    different motions in limine.  This is what I was trying to say

2    before, but perhaps I wasn't clear.

3         If you've got five, they should all be contained in a

4    single brief.  I don't care if that brief is 30 pages long, but

5    I want all five in one.  The reason for that is it prevents me

6    from having too much paper, where I lose track of things, and

7    also rereading your introductory pieces over and over again.

8         The opposition to the motions in limine should track

9    the order in the opening motion in limine brief.  For instance,

10   Roman numeral I is to exclude testimony from Dr. X.  If it's a

11   motion in limine versus a Daubert, then the opposition would be

12   also numbered opposition to motion number 1 and would refer to

13   the same one.

14        Are any Dauberts included in this?

15        MR. STATMAN:  Possibly, your Honor.

16        THE COURT:  Then use the same schedule.  Dauberts can

17   have a slightly different schedule.  Use the same schedule.

18   But they take additional briefing.  I need to see the expert

19   reports, any expert deposition that might be relevant to if

20   it's a qualification issue or whether they have the relevant

21   opinions.  Give me whatever you think I need.

22        In terms of whether it is just a paragraph or

23   affidavits, I want you to put in what you believe is necessary

24   to provide the Court with the information to make an

25   appropriate ruling.  Motions in limine are necessarily

 1    tentative in the sense that they occur prior to trial, when the

 2    Court is dealing with the record that the Court understands

 3    that is before it.

 4          If, for instance, there is a motion in limine that

 5    certain evidence is irrelevant and the Court agrees, it may

 6    turn out, as the evidence comes in at trial, that what was once

 7    thought irrelevant is now suddenly relevant, and a party having

 8    been ruled against in a motion in limine should protect itself

 9    by raising it again if there is an appropriate application to

10    be made during the trial.

11          In the meantime, give me what you think you have and

12    need to give me to have me rule.  I'm not going to arbitrarily

13    limit you to a paragraph.

14          MR. STATMAN:  Thank you, your Honor.

15          THE COURT:  One other thing.  If a prior court has

16    made a ruling on that same topic, please do submit the Court's

17    prior rulings on that topic.  If you have already briefed this

18    and you have won it twice and lost it twice, I want all four

19    opinions or orders.

20          MR. STATMAN:  Will do, your Honor.

21          THE COURT:  Is there anything else?

22          MR. COOPER:  Yes, Judge.  Eric Cooper again.  I have

23    one point of clarification on your individual rules.

24          THE COURT:  Yes.

25          MR. COOPER:  I had read section 3 the pretrial

1    procedures (a) Roman numeral (v) to mean that a live witness is

2    only going to be called once.  It is our intention to call a

3    corporate representative from both Eaton as well as Gould

4    Electronics.  However, based on some of your language quashing

5    Cleaver Brooks's subpoena, I'm not now quite sure how that

6    issue is going to be handled by the Court.

7              THE COURT:  Here is the issue, a couple of things.

8    One, if the defendant is intending to call a person, then you

9    have the ability to also call that same person.  But I don't

10   have the power to get that person into this jurisdiction for

11   you if they are outside of 100 miles.  I just don't have the

12   power to do that.  My rule is that if there is a trial witness

13   as to whom one party is going to call, I don't allow the other

14   side to call that party also.

15             For instance, if Eaton is going to call John Doe but

16   you planned on calling John Doe and you go first, I will allow

17   John Doe to be called in the plaintiffs' case.  However, I will

18   allow Eaton to go beyond the scope of whatever, quote, direct

19   you put on from that hostile witness in order to bring out

20   whatever the story is.  They will prospectively interrupt their

21   case with your testimony as well.

22             Each witness goes on the stand once.  You folks need

23   to exchange your trial witness lists, figure out where the

24   overlap is.  If the defendants do not intend to call somebody,

25   they should so state.  They should give you a real list, and

1  you likewise, so people have a clear and reasonable

2  understanding of who is going to be called.

3       If you have deposition testimony of somebody outside

4  of 100 miles or that is otherwise admissible under the rules as

5  deposition testimony properly designated, then you can

6  certainly designate that, and that could be read to the jury.

7       MR. COOPER:  Judge, I will wait for the response to

8  our joint pretrial order to see whether or not Gould and Eaton

9  are calling a corporate witness, so to speak.  Then we can take

10  it from there.

11       THE COURT:  Great.  Anything else?

12       MR. COOPER:  That's it for me, for us.

13       MR. WEILL:  Jackson Weill from Eaton Corporation.  You

14  mentioned the possibility of a settlement conference.  I note

15  that we have a pretrial conference on the 19th of February.  I

16  think it might be beneficial to have a settlement conference.

17       THE COURT:  What I can do is give you folks a

18  reference to a magistrate judge, but we won't set aside the

19  time we have for the final pretrial conference for that.  I

20  don't conduct settlement conferences myself.  I don't find it a

21  particularly good use of my time, because you spend a lot of

22  time doing it often and it doesn't result in anything.  Also,

23  the magistrates are far more skilled than I am at doing this.

24  They are much more efficient at it and they are actually able

25  to get it done.

1        I will give you a reference.  But you should know that

2    you are on a very tight time frame because I will not adjourn

3    the trial unless there is a settlement in principle.

4        MR. WEILL:  Understood, your Honor.

5        THE COURT:  I'll give a reference today.  It is

6    whoever the magistrate is who is randomly assigned to the case.

7    You should try to get on his or her calendar right away.  We

8    will put in a reference today.

9        MR. WEILL:  Thank you, your Honor.

10        THE COURT:  Anything further?  All right.  I look

11   forward to receiving the final pretrial order materials from

12   you folks.  I do encourage you to come up with real witness

13   lists with real indications of the time that will be spent so

14   that we don't have a situation where we've got the real

15   witnesses buried in the witness list, because I will just have

16   people go back and put in a real witness list.

17        If you have problems with each other coming up with

18   those kinds of real witness lists, let me know in advance of

19   the final pretrial and we can get that sorted out.  Don't wait

20   until the final pretrial, because we will have so little time

21   between then and trial.  So if you run into issues, let me

22   know.

23        There is a transcript of this proceeding, which

24   includes the Court's decision as I stated on the two motions

25   for summary judgment.  If you want the written decision, you

1   will need to get it from the transcript.   The Court will put an

2   order simply granting those motions.

3             Thank you.   We are adjourned.

4             (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25